UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 5, 2014

LETTER TO COUNSEL:

    RE:    *Yvette Jenkins v. Commissioner, Social Security Administration;*
             Civil No. SAG-13-1967

Dear Counsel:

On July 8, 2013, the Plaintiff, Yvette Jenkins, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits ("DIB"). (ECF No. 1). I have considered the Commissioner's motion for summary judgment. (ECF No. 22). Ms. Jenkins, who appears *pro se*, has not filed a motion for summary judgment or an opposition to the Commissioner's motion. I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will grant the Commissioner's motion. This letter explains my rationale.

Ms. Jenkins filed her claim on January 12, 2010 alleging disability beginning on October 2, 2009. (Tr. 169–72). Her claim was denied initially on August 5, 2010, and on reconsideration on December 7, 2010. (Tr. 114–18, 124–25). A hearing was held on October 19, 2011 before an Administrative Law Judge ("ALJ"), at which time Ms. Jenkins was represented by counsel. (Tr. 29–88). Following the hearing, on January 19, 2012, the ALJ determined that Ms. Jenkins was not disabled during the relevant time frame. (Tr. 14–23). The Appeals Council denied Ms. Jenkins's request for review, (Tr. 1-5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that during the relevant time period, Ms. Jenkins suffered from the severe impairments of fibromyalgia, degenerative disc disease of the cervical spine, status post discectomy and fusion C4-5, C5-6, C6-7, right shoulder rotator cuff tear, status post repair, asthma, obesity, and depression. (Tr. 16). Despite these impairments, the ALJ determined that Ms. Jenkins retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a), but she needs the ability to change position from sitting to standing at will; she can occasionally climb stairs, stoop, kneel, crouch, and crawl; she cannot climb ladders or be exposed to vibration, moving machinery, unprotected heights, extreme cold, gas, dust, fumes, and odors; she is limited to simple, routine, repetitive tasks involving short, simple instructions in an environment with few workplace changes, no public contact, and only brief, infrequent contact with co-workers and supervisors.

(Tr. 19). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Jenkins could perform jobs that exist in significant numbers in the

*Yvette Jenkins v. Commissioner, Social Security Administration;*
Civil No. SAG-13-1967
May 5, 2014
Page 2

national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 22–23).

Although Ms. Jenkins has not filed a motion in support of her appeal, I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

The ALJ's sequential evaluation appears to address, at step two, each of the impairments that Ms. Jenkins suffered during the relevant time frame. As noted above, the ALJ concluded that several of Ms. Jenkins's impairments were severe. In support of this conclusion, the ALJ cited to the medical evidence of record demonstrating discectomies in March, 1999 and December, 2009, a diagnosis of fibromyalgia, and right shoulder rotator cuff repair. *See* (Tr. 16). The ALJ also noted that Ms. Jenkins's height and weight demonstrated that she was obese. *Id.* The ALJ did not find that Ms. Jenkins's irritable bowel syndrome and general gastrointestinal issues were severe impairments, because the medical record did not indicate that her symptoms were limiting. *Id.* at 17. Similarly, the ALJ did not credit diagnoses of PTSD, pain disorder, or obsessive compulsive traits, as Ms. Jenkins has had no formal mental health treatment and on examination, Ms. Jenkins has "generally not presented any signs of unusual mood or behavior..." *Id.* Despite the lack of evidentiary support for Ms. Jenkins's mental impairments, other than depression, the ALJ nevertheless considered her reported symptoms in the RFC assessment. Accordingly, I find no basis for remand.

At step three, the ALJ determined that Ms. Jenkins's impairments did not meet the specific requirements of, or medically equal the criteria of, any Listings. (Tr. 17). The ALJ considered the specific requirements of Listings 1.02, 1.04, 3.03, 12.04, 12.06, 12.07, and 12.08. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. I agree that no Listings are met. Listings 1.02 and 1.04 pertain to major dysfunction of a joint, and disorders of the spine, respectively. The ALJ concluded that Ms. Jenkins did not meet the criteria of 1.02B, which requires "involvement of one major peripheral joint in each upper extremity...resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02. An "inability to perform fine and gross movements effectively" requires a showing of "an extreme loss of function of both upper extremities," which prevents an individual from performing such tasks as preparing a simple meal, caring for personal hygiene, or sorting and handling papers or files. *Id.* at § 1.00B2c. Ms. Jenkins's record contains evidence that she makes simple meals at times, cares for children, and attends to her personal hygiene. *See* (Tr. 51–54, 57–59, 223–31, 242–49). Therefore, the ALJ's finding that Listing 1.02 was not met is supported by substantial evidence. Likewise, the ALJ's finding that Listing 1.04 is not met is supported by substantial evidence. The ALJ stated that medical imaging in Ms. Jenkins's record did not indicate compromise of a nerve root, which Listing 1.04 requires. Imaging of Ms. Jenkins's cervical spine after her anterior fusions showed "no evidence of anatomically

significant spinal or neural foraminal stenosis at any level." (Tr. 465, 927). Similarly, an MRI of the lumbosacral spine did not demonstrate any significant abnormalities. (Tr. 467, 929).

Ms. Jenkins's asthma also did not meet the criteria of the relevant listing. Listing 3.03 requires a showing of asthma with chronic asthmatic bronchitis, or attacks "in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.03. The ALJ noted that tests evaluating Ms. Jenkins's forced expiratory volume exceeded levels specified in the Listing table. *See* (Tr. 17) (*citing* Tr. 488–89) (noting FEV 1 levels of 1.84, 1.87, which are above the 1.15 level for a person of Ms. Jenkins's height). Moreover, Ms. Jenkins does not appear to have asthma attacks with the frequency required, as the ALJ noted that only one incidence of emergency medical treatment appears in her record. (Tr. 17).

Substantial evidence also supports the ALJ's finding that Ms. Jenkins failed to meet the criteria of the Listings pertaining to mental disorders. These listings require the claimant to satisfy "paragraph B" criteria. The "paragraph B" criteria require the claimant to demonstrate that her impairment results in at least two of the following: (1) marked restrictions of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. The ALJ concluded, and I agree, that Ms. Jenkins's impairments fall short of the "paragraph B" criteria. The ALJ discussed the scant medical evidence of Ms. Jenkins's mental impairments. First, the ALJ noted that Ms. Jenkins lacked any evidence of mental health treatment, except for a lone meeting with Dr. Peck and medication prescribed by her primary care physician, Dr. Gasparovich. (Tr. 18). Although Dr. Peck assessed a Global Assessment of Functioning ("GAF") score of 30, the ALJ stated that the record as a whole did not support such a low score, as on examination, Ms. Jenkins presented "appropriate mood or affect, with no deficiencies in orientation or concentration."[1] *Id.* The ALJ ultimately found that Ms. Jenkins had mild restriction in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation of an extended duration. *Id.* at 17–18. The record supports the ALJ's findings. Ms. Jenkins stated during the hearing, and in an Adult Function Report, that she has difficulty being around others, and that she has trouble with concentration. *See* (Tr. 55–56, 246–47).

If the claimant does not meet the "paragraph B" criteria, Listings 12.04 and 12.06 may nevertheless be satisfied if the claimant meets the criteria in "paragraph C." The ALJ's conclusion that Ms. Jenkins failed to satisfy any of the "paragraph C" criteria is supported by substantial evidence. With respect to Listing 12.04, the "paragraph C" criteria require a showing of a chronic affective disorder, including repeated episodes of decompensation, or a risk of decompensation upon a minimal increase in mental demands, or an inability to function outside a

---

[1] Moreover, "a GAF score is not determinative of whether a person is disabled. Rather, the Social Security Administration does not endorse the use of the GAF in Social Security and SSI disability programs, and it does not directly correlate to the severity requirements in the mental disorders listings." *Melgarejo v. Astrue,* No. JKS 08–3140, 2009 WL 5030706, at *2 (D. Md. Dec. 15, 2009) (*citing Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury,* 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)).

highly supportive living arrangement. As noted above, Ms. Jenkins has suffered no episodes of decompensation and the record does not indicate a risk of decompensation upon a minimal increase in mental demands or an inability to function outside of a highly supportive living arrangement. Ms. Jenkins also fails to satisfy the "paragraph C" criteria of Listing 12.06, which require a claimant to show that her impairment results in a complete inability to function independently outside the area of his or her home. 20 C.F.R. Part 404, Subpart P, Appendix 1,§ 12.06C. Ms. Jenkins testified that she visits her mother's home, at times staying overnight, and that she drives her car and goes shopping. (Tr. 54–55, 57, 226, 245). Accordingly, the ALJ's conclusion that Ms. Jenkins does not meet any mental disorder Listing is supported by substantial evidence.

At step four, the ALJ summarized Ms. Jenkins's subjective complaints. (Tr. 19–20). The ALJ did not find Ms. Jenkins's statements concerning the intensity, persistence, and limiting effects of her symptoms to be credible. *Id.* The ALJ first described Ms. Jenkins's subjective complaints that her medication causes drowsiness, that she can only lift five pounds, that she can stand or walk 15 to 20 minutes, sit for 20 minutes, and that she has difficulty reaching above her head. (Tr. 20). The ALJ then specifically pointed out the medical evidence that directly contradicted these complaints. Ms. Jenkins's medical record demonstrates that she did not consistently take medication for her fibromyalgia, which suggests, as the ALJ noted, that her subjective complaints of pain are not as severe as she contends. *See* (Tr. 20) (*citing* Tr. 1025). Ms. Jenkins's shoulder also improved after surgery. *See* (Tr. 591, 946, 1017–18). The ALJ also stated that physical therapy records demonstrated that Ms. Jenkins retained "significant functional capacity" in spite of her weight. *See* (Tr. 20). Ms. Jenkins complained of mental impairments, but as noted above, the medical evidence of record did not demonstrate mental health treatment. Ms. Jenkins testified that obtaining mental health treatment is frowned upon in her religion, and that she turns to her pastor for counseling. (Tr. 44–45). However, she admitted that she rarely took advantage of counseling from her pastor, leading the ALJ to conclude that her claims of depression were not entirely credible. (Tr. 21, 45–46).

Next, the ALJ evaluated the opinion evidence of record. The ALJ reviewed each medical opinion and assigned it weight based on a number of factors, including whether the opinion was supported by the medical record as a whole. *See* 20 C.F.R. § 404.1527(c)(1)–(6). The ALJ concluded that Dr. Peck's opinion was reliant on Ms. Jenkins's subjective complaints more so than clinical observations, thus it was entitled to "limited weight." (Tr. 21). The ALJ also assigned "limited weight" to two Physical RFC Assessments completed by Dr. Parikshak and Dr. Biddison. *See* (Tr. 358–65, 504–11). While both assessments concluded that Ms. Jenkins was capable of lifting 20 pounds occasionally, standing and/or walking about six hours in an eight-hour day, and sitting six hours in an eight-hour day, the assessments disagreed on postural and environmental limitations. The ALJ ultimately gave Ms. Jenkins "the benefit of the doubt" and imposed restrictions in the RFC assessment that credited her symptoms related to asthma, pain, and shoulder repair. (Tr. 21). Finally, the ALJ assigned "some weight" to the Mental RFC Assessment of state agency psychologist Dr. Paula Bickham, finding that Dr. Bickham's opinion was "reasonable and generally consistent with the record relating to the claimant's alleged social difficulties." *Id.* However, the ALJ departed from Dr. Bickham's recommendations with regard to understanding and memory and limited Ms. Jenkins's RFC assessment to routine, repetitive

tasks with short, simple instructions. *Id.* I find that the ALJ properly weighed the opinion evidence and the RFC assessment rests on substantial evidence.

As part of step four, the ALJ must determine whether the claimant is capable of performing any past relevant work. Here, the ALJ heard testimony from the VE regarding the ability of a person with Ms. Jenkins's RFC assessment to perform past relevant work as a hospital clerk, waitress, or receptionist. (Tr. 77). The VE testified that Ms. Jenkins's past work was semi-skilled. *Id.* The ALJ concluded that Ms. Jenkins's RFC assessment precluded the performance of her past relevant work. (Tr. 22). The VE testified that a person with Ms. Jenkins's RFC assessment would be capable of performing the jobs of a packer, film developer assistant$^2$, and security monitor, all of which allow a sit/stand option. (Tr. 79–80). Based on the VE's testimony, the ALJ concluded that Ms. Jenkins is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, thus she is not disabled. I find that the ALJ's determination was supported by substantial evidence.

For the reasons set forth herein, the Commissioner's motion for summary judgment (ECF No. 22) will be GRANTED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

                                        Sincerely yours,

                                        /s/

                                        Stephanie A. Gallagher
                                        United States Magistrate Judge

---

$^2$ The film developer position relied upon by the ALJ appears obsolete. I previously concluded in *Czosnowski v. Commissioner, Social Security*, RDB-13-1467, 2014 WL 1660083 (D. Md. Apr. 23, 2014), that the ALJ's finding that the claimant could perform the jobs of press clippings cutter-and-paster and microfilming document preparer was not supported by substantial evidence, given the present-day rarity of these positions. Given the prevalence of digital photography, it is difficult to imagine that 300 film developer assistant positions still exist in the regional economy, and that 40,000 such positions exist in the national economy. *See* (Tr. 23). However, the VE testified to the availability of other positions, which do not appear outdated. Therefore, I find that the ALJ's decision that Ms. Jenkins can perform jobs that exist in significant numbers in the national economy is supported by substantial evidence. *See Lawler v. Astrue,* No. 09–1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only 75–100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy."); *Hicks v. Califano,* 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number).